Debbie P. Kirkpatrick, Esq. (SBN 207112)
Damian P. Richard, Esq. (SBN 262805)
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.
1545 Hotel Circle South, Suite 150
San Diego, CA  92108-3426
Tel:    619/758-1891
Fax:   619/296-2013
dkirkpatrick@sessions-law.biz
drichard@sessions-law.biz
Attorneys for Transworld Systems, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KLEJA and CAROL KLEJA, individuals, on their own behalf and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>TRANSWOLD SYSTEMS, INC., a California corporation and DOES 1-5, inclusive,<br><br>　　　　　　　Defendants. | Case No.  CV-14-00946 CRB<br><br>DEFENDANT TRANSWORLD SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br>Date:  December 18, 2015<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Friday, December 18, 2015 at 10:00 a.m., in Courtroom 6, 17th Floor of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Transworld Systems, Inc. ("Defendant") will move this Court pursuant to FRCP 12(f), to strike all class allegations contained in the Complaint.  (Compl. ¶¶ 26-34 and references to "Class" or "Class member[s]" in ¶¶ 1-25, 35 through Prayer for Relief.)

Defendant's motion to strike class allegations is based on the grounds that Plaintiffs cannot meet the requirements for a class action and the unsuitability of class treatment is evident on the face of the Complaint and the incontrovertible facts.

Defendant respectfully submits the following Memorandum of Points and Authorities in support of its motion, along with the Declaration of Damian P. Richard filed concurrently, and the declarations and other pleadings already on file with the Court.

Dated: November 13, 2015          SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.

_/s/ Damian P. Richard_
Damian P. Richard
Attorney for Defendant
Transworld Systems, Inc.

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF FACTS ............................................................................................. 3

III.  LAW AND ARGUMENT ............................................................................................. 5

  A.  STANDARD GOVERNING MOTION TO STRIKE CLASS ALLEGATIONS ............. 6

  B.  PLAINTIFFS' TCPA CLAIM FAILS BECAUSE OF THE "ONE CALL" SAFE
      HARBOR .................................................................................................................. 7

  C.  DEFENDANT RELIED IN GOOD FAITH ON THE PRIOR EXPRESS CONSENT OF
      THE DEBTOR WHEN PLACING ONLY FOUR UNANSWERED CALLS ................. 9

  D.  COMMON SENSE DICTATES THE TCPA CLASS LIABILITY IS INAPPLICABLE
      TO THE FACTS OF THIS CASE ............................................................................. 11

  E.  THE PROPOSED CLASS IS NOT ACCERTAINABLE ............................................. 12

  F.  PLAINTIFFS' CLAIMS, IF ANY, ARE NOT TYPICAL ........................................... 14

    1.  ALL FOUR CALLS WERE AUTO-FORWARDED AND WENT UNANSWERED—
        PLAINTIFFS NEVER *RECEIVED* A WRONG NUMBER CALL ............................. 15

    2.  TYPICALITY FAILS BECAUSE PLAINTIFFS' FACTS PRESENT UNIQUE
        DEFENSES .......................................................................................................... 16

  G.  INDIVIDUAL QUESTIONS, NOT COMMON QUESTIONS, PREDOMINATE ........ 18

  H.  PLAINTIFFS ASSERT AN IMPERMISSIBLE, "FAIL-SAFE" CLASS ...................... 21

IV.  CONCLUSION .............................................................................................................. 24

# Table of Authorities

## Cases

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ...........................................................................................18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
133 S.Ct. 1184 (2013) .........................................................................................5

*Balschmiter v. TD Auto Fin. LLC,*
303 F.R.D. 508 (E.D. Wis. 2014).....................................................................7, 20

*Balthazor v. Cent. Credit Servs., Inc.,*
2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) ...................................................18

*Beck v. Maximus, Inc.,*
457 F.3d 291 (3d Cir. 2006)..............................................................................17

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.,*
2015 WL 401443 (W.D. Pa. 2015) ....................................................................22

*Benito v. Indymac Mortg. Services,*
2010 WL 2089297 (D. Nev. 2010) ....................................................................12

*Bennett v. Hayes Robertson Group, Inc.,*
880 F. Supp. 2d 1270 (S.D. Fla. 2012).............................................................23

*Bonime v. Avayu,*
547 F.3d 497 (2d Cir. 2008)..............................................................................16

*Bridging Communities, Inc. v. Top Flite Financial, Inc.,*
2013 WL 2417939 (E.D. Mich. June 3, 2013) ..................................................13

*Chavez v. Advantage Group,*
2013 WL 4011006 (D. Colo. 2013) .....................................................................9

*Chen–Oster v. Goldman, Sachs & Co.,*
877 F.Supp.2d 113 (S.D.N.Y. 2012)...................................................................6

*Chesbro v. Best Buy Stores, L.P.,*
705 F.3d 913 (9th Cir. 2012)............................................................................11

*Chyba v. First Financial Asset Mgmt.,*
2014 WL 1744136 (S.D. Cal. April 30, 2014)............................................9, 10, 17

*Clark v. Capital Credit & Collection Services,*
460 F.3d 1162 (9th Cir. 2005)....................................................................10, 18

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) ........................................................................................5

*Connelly v. Hilton Grand Vacations Co., LLC,*
294 F.R.D. 574 (S.D. Cal. 2013).......................................................................13

*Conrad v. General Motors Acceptance Corp.,*
283 F.R.D. 326 (N.D. Tex. 2012) .....................................................................13

*Danehy,*
2015 WL 5534285...............................................................................................17

*Davis v. Wells Fargo Advisors LLC,*
2014 WL 1370278 (D. Ariz. 2014)......................................................................6

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011)......................................................................14, 16

*Emanuel v. Los Angeles Lakers, Inc.,*
2013 WL 1719035 (C.D. Cal. Apr. 18, 2013).....................................................11

*Felix v. Northstar Location Services, LLC,*
290 F.R.D. 397 (W.D. N.Y. 2013) ................................................................23

*Fleck v. Cablevision VII, Inc.,*
763 F. Supp. 622, Fed. Sec. L. Rep. (CCH) P 96242 (D.D.C. 1991) ....................................17

*Forman v. Data Transfer, Inc.,*
164 F.R.D. 400 (E.D. Pa. 1995) ................................................................13

*G.M. Sign, Inc. v. Brink's Mfg. Co.,*
2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ................................................13, 19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
903 F.2d 176, 16 Fed. R. Serv. 3d 700, Fed. Sec. L. Rep. (CCH) P 95630 (2d Cir. 1990) ......16

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ................................................................15

*Gene & Gene LLC v. BioPay LLC,*
541 F.3d 318 (5th Cir. 2008) ................................................................12, 13, 18

*Greene v. DirecTV, Inc.,*
2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ................................................................8

*Gutierrez v. Barclays Group,*
2011 WL 579238 (S.D. Cal. Feb. 9, 2011) ................................................................1, 17

*Hanon v. Dataproducts Corp.,*
976 F.2d 497, 23 Fed. R. Serv. 3d 786, Fed. Sec. L. Rep. (CCH) P 97021 (9th Cir. 1992) .....17

*Harrell v. CheckAGAIN, LLC,*
248 F.R.D. 199 (S.D. Miss. 2006) ................................................................13

*Hawkins v. Comparet–Cassani,*
251 F.3d 1230 (9th Cir.2001) ................................................................15

*Heller Fin., Inc. v. Midwhey Powder Co.,*
883 F.2d 1286 (7th Cir. 1989) ................................................................6

*Henrique v. U.S. Marshal,*
653 F.2d 1317 (9th Cir. 1981) ................................................................11, 12

*Hicks v. Client Services, Inc.,*
2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) ................................................................18

*Hurt v. Shelby County Bd. of Educ.,*
2014 WL 4269113 (N.D. Ala. 2014) ................................................................22

*In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.,*
289 F.R.D. 526 (N.D. Cal. 2012) ................................................................21

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,*
23 F.C.C.R. 559 (Jan. 4, 2008) ................................................................8, 20

*In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,*
7 F.C.C.R. 8752 (Oct. 16, 1992) ................................................................8

*In the Matter of the Joint Petition Filed by Dish Network, LLC, Declaratory Ruling Concerning
the Tel. Consumer Prot. Act (TCPA) Rules,*
28 F.C.C. Rcd. 6574 (2013) ................................................................20

*Jackson v. Southeastern Pennsylvania Transp. Authority,*
260 F.R.D. 168 (E.D. Pa. 2009) ................................................................23

*Jamie S. v. Milwaukee Public Schools,*
668 F.3d 481, 277 Ed. Law Rep. 34, 81 Fed. R. Serv. 3d 890 (7th Cir. 2012) ......................23

*Jordan v. ER Solutions, Inc.,*

900 F. Supp. 2d 1323 (S.D. Fla. 2012)...........................................................................20
*Kamar v. RadioShack Corp.,*
375 F. App'x 734 (9th Cir. 2010) ...........................................................................21, 22
*Kas v. Financial General Bankshares, Inc.,*
105 F.R.D. 453, 40 Fed. R. Serv. 2d 1031, 1 Fed. R. Serv. 3d 726, Fed. Sec. L. Rep. (CCH) P
91902, Fed. Sec. L. Rep. (CCH) P 91989 (D.D.C. 1984)....................................17
*Kasalo v. Harris & Harris,*
656 F.3d 557 (7th Cir. 2011)...........................................................................6
*Kenro, Inc. v. Fax Daily, Inc.,*
962 F. Supp. 1162 (S.D. Ind. 1997) ...........................................................................13
*Kondratick v. Beneficial Consumer Discount Co.,*
2006 WL 305399 (E.D. Pa. 2006)...........................................................................23
*Koos v. First Nat. Bank of Peoria,*
496 F.2d 1162 (7th Cir. 1974)...........................................................................16
*Kristensen v. Credit Payment Services,*
2014 WL 1256035 (D. Nev. 2014) ...........................................................................22
*Labou v. Cellco Partnership,*
2014 WL 824225 (E.D. Cal. Mar. 3, 2014) ...........................................................................14
*Levitt v. Fax.com,*
2007 WL 3169078 (D. Md. May 25, 2007) ...........................................................................13
*Lewis Tree Service, Inc. v. Lucent Technologies Inc.,*
211 F.R.D. 228 (S.D.N.Y. 2002) ...........................................................................14
*Martin v. Home Depot U.S.A., Inc.,*
225 F.R.D. 198 (W.D. Tex. 2004) ...........................................................................14
*Mazza v. Am. Honda Motor Co., Inc.,*
666 F.3d 581 (9th Cir. 2012)...........................................................................5
Meyer v. Portfolio Recovery Assocs., LLC,
707 F.3d 1036 (9th Cir.2012)...........................................................................7
*Mims v. Arrow Fin. Servs., LLC,*
132 S. Ct. 740 (2012) ...........................................................................12
*Mt. Graham Red Squirrel v. Madigan,*
954 F.2d 1441 (9th Cir. 1992)...........................................................................11
*Onley v. Job.com, Inc.,*
2013 WL 5476813 (E.D. Cal. Sept. 30, 2013) ...........................................................................21
*Randleman v. Fidelity Nat. Title Ins. Co.,*
646 F.3d 347, 79 Fed. R. Serv. 3d 828 (6th Cir. 2011)...........................................................................22
*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon,*
775 F.3d 154 (2d Cir. 2014)...........................................................................15
*Richey v. Matanuska-Susitna Borough,*
2015 WL 1542546 n.14 (D. Alaska 2015) ...........................................................................12, 22
*Sanders v. Apple Inc.,*
672 F.Supp.2d 978 (N.D. Cal. 2009) ...........................................................................6
*Saunders v. NCO Financial Systems, Inc.,*
910 F.Supp.2d 464 (E.D.N.Y. 2012)...........................................................................9
*Soto v. Castlerock Farming and Transport, Inc.,*

    282 F.R.D. 492 (E.D. Cal. 2012)...................................................................15
*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011).................................................................13
*Taylor v. Universal Auto Grp. I, Inc.,*
    2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ......................................21
*Thompson v. Jiffy Lube Intern., Inc.,*
    250 F.R.D. 607 (D. Kan. 2008)................................................................17
*Vandervort v. Balboa Capital Corp.,*
    287 F.R.D. 554 (C.D. Cal. 2012) ............................................................13
*Versteeg v. Bennett, Deloney & Noyes, P.C.,*
    271 F.R.D. 668 (D. Wyo. 2011)...............................................................13
*Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.,*
    274 F.R.D. 229 (S.D. Ill. 2011).........................................................13, 20
*Wiener v. Dannon Co., Inc.,*
    255 F.R.D. 658 (C.D. Cal. 2009) ............................................................14
*Wright v. Family Dollar, Inc.,*
    2010 WL 4962838 (N.D. Ill. 2010)...........................................................6
*Ybarra v. Dish Network, L.L.C.,*
    2015 WL 6159755 (5th Cir. Oct. 20, 2015) .......................................15, 16
Young v. Nationwide Mut. Ins. Co.,
    693 F.3d 532 (6th Cir. 2012)...................................................................22

**Statutes**
47 U.S.C. § 227 .........................................................................................1
47 U.S.C. § 227(b)(1)(A)............................................................................9

**Rules**
Fed. R. Civ. P. 23(a) ............................................................................5, 17
Fed. R. Civ. P. 23(a)(2).............................................................................18
Fed. R. Civ. P.  23(a)(3).............................................................................14
Fed. R. Civ. P.  23(a)(4).............................................................................14
Fed. R. Civ. P.  23(b)(3).............................................................................18
Fed. R. Civ. P. 23(b)(3)(d)........................................................................20
Fed. R. Civ. P. 23(c)(1)(A) ..........................................................................6
Fed. R. Civ. P. 12(f)....................................................................................6

**Other Authorities**
1 McLaughlin on Class Actions § 3:4..........................................................6
Newberg on Class Actions § 3:2................................................................12
The Fail–Safe Class As an Independent Bar to Class Certification,
    81 Fordham L. Rev. 2769 (2013)............................................................22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Carol and John Kleja ("Plaintiffs") are residents of Bethlehem, Georgia.  Plaintiff Carol Kleja's[1] discount cellular provider assigned her a recycled number which was previously assigned to a woman in Florida who failed to pay her hospital bill.  Defendant placed one (1) dialer[2] call and three (3) manual calls to the cell number in an attempt to collect on the debt, not knowing that the debtor had abandoned the number.  Carol Kleja did not answer any of the calls.  All four calls were automatically forwarded to another number not alleged in the complaint.  Only *one* (1) call was made through a system that may constitute an automatic telephone dialing system ("ATDS") governed by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The other three calls were made manually, and therefore are not governed by the TCPA.

On June 10, 2015, the Federal Communication Commission ("FCC") ruled and granted a TCPA safe harbor provision for one call—like the single TCPA call made to Plaintiff Carol Kleja.  (*See* FCC, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, ¶¶ 89-91 (July 10, 2015) ("2015 TCPA Order"), attached as Exhibit ("Ex.") 1 to the Request for Judicial Notice ("RJN") filed concurrently).[3]

---

[1] As set forth in the business records from TracFone, the wireless service provider, only Carol Kleja is the subscriber of the cellular number at issue in this case.  Declaration of Damian P. Richard ("Richard Decl.") ¶ 5, Ex. B.  As it pertains to Plaintiff John Kleja, he has no standing under the TCPA and is not an adequate class representative.  When it comes to the application of the TCPA to cell phones, courts within this Circuit have held, "the TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for calls made to that number."  *Gutierrez v. Barclays Group,* 2011 WL 579238, *5 (S.D. Cal. Feb. 9, 2011).

[2] Defendant will not contest, for purposes of this motion only, that the one call made through the LiveVox predictive skill was an automated call. Nonetheless, and outside the scope of this motion, the LiveVox predictive skill should not be considered an automatic telephone dialing system under the TCPA because it lacks either a present or future capacity to make a call using a random or sequential number generator.

[3] Available online at https://www.fcc.gov/document/tcpa-omnibus-declaratory-rulingand-order (last visited July 11, 2015).

The safe-harbor provision exempts the call from the TCPA where the caller had no knowledge that the cell number had been reassigned and no longer belonged to the debtor.   Because the other three calls were made manually, the FCC's 2015 TCPA Order negates Plaintiffs' sole cause of action.

While it is apparently true that Plaintiff Carol Kleja did not provide consent for Defendant to call her newly-reassigned cellular number, the following is also true:

- Defendant had consent to call the previous subscriber to the number, and Defendant had no knowledge that the number had been reassigned;

- only four calls were placed—one using the LiveVox predictive skill, the other three placed manually;

- Plaintiff Carol Kleja immediately forwarded all four numbers to another number not alleged in the Complaint;

- All four calls went unanswered and no messages were left;

- Records from Plaintiff Carol Kleja's wireless provider indicate not one of the four calls was even *received.*

Indeed, Plaintiffs' counsel have embarked on a fishing expedition of the greatest magnitude.   Armed with only a single TCPA call—a call intended for a medical debtor who was the previous subscriber to the recycled cellular number—Plaintiffs now demand access to the medical and financial records of countless Americans, in addition to records for over 399 million calls.   Plaintiffs' case could not be more contrived.

Their Complaint falsely exaggerates the number of calls to Carol Kleja's recycled cellular number.   At paragraph 20, Plaintiffs falsely allege "that [Defendant] called their [sic] cellular telephone over twenty-five (25) times between December 2013 and the present."   However, Defendant's records, the phone carrier's records, and the prepaid wireless provider's records all establish, incontrovertibly, that only four calls were attempted by Defendant; three manually-placed calls, and one call with the LiveVox skill.   And not a single call was actually *received* on the number alleged.

The only specific factual allegations gleamed from the Complaint relate to Carol Kleja and the single TCPA call.  There are no specifications of grievances by other purported members of the class.  Indeed, Plaintiffs cannot name one other person who fits within their class definition.  All class claims should be stricken.

## II.    STATEMENT OF FACTS

As set forth in the Declaration of Greg Stevens, [Dkt. 67-2], on October 4, 2013, Defendant's client, Madison County Memorial Hospital, in Madison, Florida, placed a delinquent healthcare account balance of $476.90 in the name of patient Dornea Green with Defendant for collection.  (*Id.*, ¶ 3.)  Mrs. Green, a resident of nearby Perry, Florida, had provided the wireless telephone number ending in 1138 as her home number when she registered with the hospital.  (*Id.*)  Sometime thereafter Mrs. Green terminated her use of the wireless number ending in 1138.  (*Id.*)

On November 7, 2013, plaintiff Carol Kleja, a resident of Bethlehem, Georgia, subscribed to a cellular telephone service account with TracFone Wireless, Inc. ("TracFone") and was issued the wireless number ending in 1138.  (Declaration of Damian Richard ("Richard Decl.") ¶ 5, Ex. B.)  TracFone is a prepaid wireless service provider.  [Dkt. 67-2, at ¶ 4.]  TracFone does not operate its own network; rather it operates as a Mobile Virtual Network Operator, "MVNO," holding agreements with other major U.S. wireless network carriers to provide service using their networks.  (*Id.*)  The cellular carrier for Carol Kleja's TracFone account was AT&T Mobility ("AT&T").  TracFone, like many prepaid wireless service providers, recycles its wireless numbers.  (*Id.*)  It is also well known in the industry that consumers switch numbers to avoid debt-collectors.  (*Id.*)

Defendant's efforts to contact the wireless number ending in 1138 consisted of the following:

a.  On December 12, 2013, at 4:19 p.m., Defendant manually dialed the home number provided trying to reach Dornea Green.  An answering machine was detected and Defendant hung up;

b.  On December 13, 2013, at 7:40 p.m., Defendant manually dialed the home number provided trying to reach Dornea Green.  An answering machine was detected and Defendant hung up;

c.  On December 18, 2013, at 3:55 p.m., Defendant used LiveVox to call the home number provided trying to reach Dornea Green.  An answering machine was detected and Defendant hung up;

d.  On December 19, 2013, at 3:34 p.m., Defendant manually dialed the home number provided trying to reach Dornea Green.  An answering machine was detected and Defendant hung up;

e.  On December 19, 2013, at 3:05 p.m., Plaintiff John Kleja, of Bethlehem, Georgia, placed an incoming call to Defendant.  Mr. Kleja informed Defendant that it was calling the wrong number and requested that further calls cease.  Defendant complied, flagged the wireless number as a bad number in the account notes, and no further calls were made by Defendant.  (*Id.* at ¶ 5.)

f.  On December 27, 2013, Mr. Kleja called Defendant again claiming that Defendant had again called the wireless number.  Mr. Kleja was mistaken, as no further calls were made by TSI after the December 19th cease request.  (*Id.*)

In total, Defendant made only four (4) attempts to call the wireless number ending in 1138 trying to reach Mrs. Green—the debtor and previous subscriber to the number.  (*Id.* at ¶¶ 4-5.)   One (1) attempt was placed with the LiveVox skill, the other three (3) attempts were made manually.  (*Id.*)  Each of the four calls went unanswered.  (*Id.*)  Each call was placed by the Defendant's numbers ending in either 2484 or 2544.

(Richard Decl. ¶3, Ex. A.)  While each call was originally placed to the number ending in 1138, each call was immediately and automatically forwarded by Plaintiffs to another number ending in 8491 which is nowhere alleged in the Complaint.  (*Id.*)  TracFone Wireless records establish that the four calls were never even *received* by the number alleged in the Complaint.  (*Id.* at ¶ 7, Ex. C.)

Plaintiffs attempt to define the following class:

a)  All natural persons residing in the United States;

b)  Who received one or more telephone calls from a predictive dialer operated by Defendants to their cellular telephone number;

c)  On or before four years from the date this complaint is filed; where

d)  The person never had an agreement with the creditor for whom Defendant seeks to collect (the "Class")

(Compl. ¶ 26.)

## III.   **LAW AND ARGUMENT**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' . . .  'To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23.'"  *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013) (internal references omitted).   A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S.Ct. 1184, 1194 (2013); *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012).  Rule 23(a) requires Plaintiff to show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a).

In addressing class certification, a probing analysis of the claim itself must take place, and "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Behrend,* 133 S. Ct. at 1432.

## A.   STANDARD GOVERNING MOTION TO STRIKE CLASS ALLEGATIONS

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, motions to strike are disfavored because they "potentially serve only to delay."  *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989). In some cases, however, a motion to strike "remove[s] unnecessary clutter from the case, [and] serve[s] to expedite, not delay."  *Id.*

Consistent with Rule 23(c)(1)(A), a court may deny class certification at "an early practicable time," even before the plaintiff files a motion requesting certification. *Kasalo v. Harris & Harris,* 656 F.3d 557, 563 (7th Cir. 2011). Particularly when pleadings "are facially defective and definitively establish that a class action cannot be maintained," the court can properly grant a motion to strike class allegations at the pleading stage. *Wright v. Family Dollar, Inc.,* 2010 WL 4962838, at *1 (N.D. Ill. 2010).  Plaintiffs have not yet filed a motion for class certification.

A motion to strike that addresses issues separate and apart from the issues that will be decided on a class certification motion is "not procedurally premature." *Chen–Oster v. Goldman, Sachs & Co.,* 877 F.Supp.2d 113, 117 (S.D.N.Y. 2012). *See also Sanders v. Apple Inc.,* 672 F.Supp.2d 978, 989–90 (N.D. Cal. 2009) ("a defendant may move to strike class allegations prior to discovery."); *Davis v. Wells Fargo Advisors LLC,* 2014 WL 1370278, *5 (D. Ariz. 2014).  *See also* 1 McLaughlin on Class Actions § 3:4 (8th ed.) (concluding that class allegations may be stricken when it appears that a

plaintiff cannot meet the requirements for a class action or "where the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts.").

Here, the class allegations in the Complaint are facially and inherently defective to establish a class action. *See e.g. Balschmiter v. TD Auto Fin. LLC,* 303 F.R.D. 508, 510-30 (E.D. Wis. 2014) (denying class certification in TCPA case finding (i) putative class is not ascertainable, (ii) that the individual issues of prior express consent would predominate over issues common to the class, and (iii) prior express consent is an individualized issue unfit for classwide resolution).

## B.   PLAINTIFFS' TCPA CLAIM FAILS BECAUSE OF THE "ONE CALL" SAFE HARBOR

On June 18, 2015, the FCC approved a Declaratory Ruling and Order on the TCPA, which was released to the public on Friday, July 10, 2015.  (RJN, Ex. 1.)  In its Ruling the FCC established a safe harbor for an autodialed "wrong number" call to a wireless number.  (*Id.* at ¶¶ 89-91)

Pursuant to the TCPA, Defendant had the *prior express consent* of the "called party" (Mrs. Green) in order to call her number with an ATDS or with a prerecorded message.[4]  Unbeknownst to Defendant, the number had been reassigned.  This was an instance covered squarely by the FCC's 2015 TCPA Order— Defendant inadvertently called a number for which it had consent, but the number has been reassigned without Defendant's knowledge.

In its 2015 TCPA Order, the FCC addressed the voluminous evidence in its record that callers have no guaranteed means to identify and therefore avoid dialing a number that has been unknowingly reassigned.  Because of this shortcoming, the FCC ruled that callers like Defendant will have a one call "safe harbor" for a single dialer call

---

[4] Though no messages were ever left by TSI.

to a reassigned number in order to gain actual or constructive knowledge of a reassignment.  (RJN Ex. 1, at ¶¶ 89-91.)

Under § 227(b)(1)(A)(iii), there are three elements to a TCPA claim: "the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir.2012).

The FCC interpretations of the TCPA, beginning in 1992, have concluded that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."  *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,* 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992).  Subsequently in 2008, in the context of debt collection calls, the FCC concluded that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."  *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 564 (Jan. 4, 2008) ("2008 FCC Ruling")*.*   In interpreting § 227(b)(1)(a)(iii) relative to debt collection calls to wireless phones, the FCC concluded:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party. Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

In the 1992 TCPA Order, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.

2008 FCC Ruling at 564–65, ¶ 10.

Where a defendant shows consent, TCPA claims under § 227(b)(1)(A)(iii) fail as a matter of law.  *Greene v. DirecTV, Inc.,* 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) (granting summary judgment to defendant on § 227(b)(1)(A)(iii) claim where prior express consent was shown); *Chavez v. Advantage Group,* 2013 WL 4011006, 4 (D. Colo. 2013)(same); *Saunders v. NCO Financial Systems, Inc.,* 910 F.Supp.2d 464, 467 (E.D.N.Y. 2012)(same).

Here, it is undisputed that the intended recipient and "prior subscriber" to the cellular number (Mrs. Green) gave prior express consent.  [Dkt. 67-2, Stevens Decl. ¶ 3.] Defendant placed one ("1") TCPA call to the cellular number intending to reach Mrs. Green, the debtor.  This single TCPA call was followed by an incoming call from Plaintiff John Kleja when Defendant first learned that the number had been reassigned. (*Id.* at ¶ 5.)  This case falls squarely within the FCC's 2015 TCPA Order and its "one-call" safe-harbor exemption to the TCPA.  (2015 TCPA Order at ¶¶ 89-91.)  Therefore, Plaintiffs' claim fails as a matter of law.

## C.   DEFENDANT RELIED IN GOOD FAITH ON THE PRIOR EXPRESS CONSENT OF THE DEBTOR WHEN PLACING ONLY FOUR UNANSWERED CALLS

Each call placed to the number alleged was made with the *prior express consent* to call the debtor; albeit Defendant did not have knowledge that the debtor had abandoned the 1138 number.  The TCPA only prohibits calls made without "prior express consent." 47 U.S.C. § 227(b)(1)(A).  In almost every instance, Defendant's calls reach the intended recipient who has provided prior express consent, and in only rare

instances is the cellular number abandoned and subsequently recycled, without knowledge to Defendant.

By virtue of the *prior express consent* of the debtor, Defendant had a privilege, and acted in good faith, to continue to reasonably act in accordance with the consent given. Rest. (Second) of Torts § 892A, cmt. i. The privilege to call continued throughout the time Defendant was calling, because Defendant never received notice of termination of consent.  *See Chyba v. First Financial Asset Mgmt.,* 2014 WL 1744136 *12 (S.D. Cal. April 30, 2014) appeal dismissed (Jan. 16, 2014) ("Even if Plaintiff is correct in stating that she never gave Defendant or Enterprise consent to call, and there was no actual prior consent from Plaintiff, Defendant is not liable for acting in good faith upon the information provided to it."); *Danehy v. Time Warner Cable Enter. LLC,* 2015 WL 5534285, at *3 (E.D.N.C. Sept. 18, 2015) ("[A]lthough plaintiff has standing to bring his ATDS claim, defendant in good faith relied on the consent of its customer, the former owner of plaintiff's telephone, when making the calls to plaintiff . . .")

Like here, in *Chyba* the U.S. District Court for the Southern District of California was asked to find TCPA liability against a debt collector.  The Court held:

> In the context of FDCPA, the Ninth Circuit has found that debt collectors have a limited obligation to verify the underlying debt. In *Clark v. Capital Credit & Collection Services,* 460 F.3d 1162, 1174 (9th Cir. 2005), the Ninth Circuit found that a debt collector was entitled to rely on the creditor statement's to verify the debt.  The Ninth Circuit cited to case law suggesting that a collector could reasonably rely upon information provided by a creditor who had been accurate in the past. *Id.*  It also held that the FDCPA did not impose any duty on the debt collector to independently investigate the claims. *Id.* (citations omitted).  It would be incongruous with the larger statutory and regulatory scheme to interpret

TCPA to require that a debt collector be liable for acting where it had a good-faith basis for doing so.

*Chyba,* 2014 WL 1744136, at *11 (granting summary judgment for debt collector defendant on TCPA claims).

Here, class claims should be stricken because Defendant relied in good faith on the *prior express consent* which existed from the debtor and was communicated by the medical creditor.

### D.   COMMON SENSE DICTATES THE TCPA CLASS LIABILITY IS INAPPLICABLE TO THE FACTS OF THIS CASE

The imposition of TCPA class liability for a single call attempted to the debtor's voluntarily-provided number, which was then auto-forwarded to another number by the Plaintiffs, would constitute an impermissibly absurd and unforeseen result.  *See* FCC 2008 Ruling (exempting "calls to wireless numbers provided by the called party in connection with an existing debt."); *Henrique v. U.S. Marshal,* 653 F.2d 1317, 1320 (9th Cir. 1981) (holding that when interpreting the scope of a statute, "the Court must . . . .refuse to be compelled into an absurd and unforeseen result.").

The Ninth Circuit has emphasized that to determine whether particular calls "run afoul of the TCPA," courts must "approach the problem with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012). This "common sense" standard has been useful guidance for district courts. *E.g., Emanuel v. Los Angeles Lakers, Inc.,* 2013 WL 1719035, *3 (C.D. Cal. Apr. 18, 2013); *Ryabyshchuk v. Citibank (S.D.) N.A.,* 2012 WL 5379143, *2-4 (S.D. Cal. Oct. 30, 2012). *See also Mt. Graham Red Squirrel v. Madigan,* 954 F.2d 1441, 1453 (9th Cir. 1992) ("Common sense not dogma is what is needed in order to explore the actual meaning of legislative enactments.").

Here, common sense renders the four unanswered, automatically-forwarded calls inactionable under the TCPA.  *See generally Henrique,* 653 F.2d at 1320 ("the Court

must recognize the common sense practicalities of the situation presented.").  The four calls at issue were attempted to a number voluntarily provided by the debtor.  Only one call was made with a dialer, while the other three calls were placed manually.  All four calls were automatically-forwarded by Plaintiffs to another number not alleged in the Complaint.  None of the four calls were answered or even received at the number alleged in the Complaint.  (Richard Decl. ¶ 7, Ex. C.)

These circumstances "unmistakably" display some measure of prior consent, *cf. Satterfield,* 569 F.3d at 955, and dispel any allusion to "the proliferation of intrusive, nuisance calls" targeted by the TCPA. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012)).

So few calls, auto-forwarded and unanswered by Plaintiffs, can hardly be termed an invasion of Plaintiffs' privacy under the TCPA. *Id.* A finding to the contrary would "stretch an inflexible interpretation beyond the realm of reason." *See Henrique,* 653 F.2d at 1320.  Not every call constitutes an actionable offense under the TCPA. Rather, the TCPA selectively targets and seeks to prevent "the proliferation of intrusive, nuisance calls." *Mims,* 132 S. Ct. at 744 (2012).

In line with the TCPA' limited purpose, the Ninth Circuit's recent emphasis on common sense practicality, and given the particular circumstances of this case, the Court should hold the calls inactionable as a matter of law and strike Plaintiffs' class allegations.

### E.    THE PROPOSED CLASS IS NOT ACCERTAINABLE

A prerequisite to class certification is that the class is "definite" or "ascertainable."  Newberg on Class Actions § 3:2 (5th ed.) (citing *Richey v. Matanuska-Susitna Borough,* 2015 WL 1542546, *2 n.14 (D. Alaska 2015) (noting that definiteness is an implicit requirement for class certification and that it is an essential element of class certification, that it is implied in Rule 23(a), or that it is encompassed in Rule 23(c)(1)(B); *Benito v. Indymac Mortg. Services,* 2010 WL 2089297, at *2 (D. Nev.

2010) (noting that Rule 23(c)(1)(B) provides persuasive authority for maintaining the implicit definiteness requirement even though it is not expressed in Rule 23).

In TCPA actions, "the unique facts of each case generally will determine whether certification is proper." *Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 328 (5th Cir. 2008).  Courts faced with evidence that there would not be liability to at least some members of the putative class who had consented to receiving communications—the exact situation presented here—have overwhelmingly determined that the requirements of Rule 23(b)(3) have not been met. *See, e.g., id.* at 327-29; *Bridging Communities, Inc. v. Top Flite Financial, Inc.,* 2013 WL 2417939, *2 (E.D. Mich. June 3, 2013); *Connelly v. Hilton Grand Vacations Co., LLC,* 294 F.R.D. 574, 577-78 (S.D. Cal. 2013); *Conrad v. General Motors Acceptance Corp.,* 283 F.R.D. 326, 329-30 (N.D. Tex. 2012); *Versteeg v. Bennett, Deloney & Noyes, P.C.,* 271 F.R.D. 668, 674 (D. Wyo. 2011); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.,* 274 F.R.D. 229, 237-38 (S.D. Ill. 2011); *G.M. Sign, Inc. v. Brink's Mfg. Co.,* 2011 WL 248511, *8-9 (N.D. Ill. Jan. 25, 2011); *Levitt v. Fax.com,* 2007 WL 3169078, *3-4 (D. Md. May 25, 2007).

Here, the determination of class membership would require the Court to "delve into the issue of liability" and determine whether each individual class member provided "prior express consent" to receive calls; therefore, the putative class cannot be determined by objective criteria and is not ascertainable.  *Vandervort v. Balboa Capital Corp.,* 287 F.R.D. 554, 557-59 (C.D. Cal. 2012); *Vigus,* 274 F.R.D. at 234-35; *Kenro, Inc. v. Fax Daily, Inc.,* 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997); *Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403-04 (E.D. Pa. 1995).  *See Harrell v. CheckAGAIN, LLC,* 248 F.R.D. 199, 204 (S.D. Miss. 2006) (denying certification for lack of ascertainability in a putative action by consumers where class membership would "essentially require mini-trials" on issues such as whether each collection effort was authorized.)

1

## F.    PLAINTIFFS' CLAIMS, IF ANY, ARE NOT TYPICAL

2

Plaintiffs attempt to assert a class action based on wrong number calls.  However,

3 none of the calls to Plaintiff Carol Kleja's cell phone were received by the number

4 alleged (Richard Decl. ¶ 7, Ex. C.), nor answered, because they were auto-forwarded by

5 the Plaintiffs to another number not alleged in the complaint (*Id.* at ¶ 3, Ex. A.)

6 Therefore, they do not constitute wrong number calls.  Plaintiffs are not even members

7 of the purported class they attempt to assert.  *See e.g. Stearns v. Ticketmaster Corp.,* 655

8 F.3d 1013, 1019 (9th Cir. 2011), petition for cert. filed, 80 U.S.L.W. 3495 (U.S. Feb. 8,

9 2012) (finding proposed class representatives atypical in class action that alleged that

10 online ticketing sales company had deceived consumers into enrolling in a costly

11 program; one proposed class representative admitted his enrollment was an accident and

12 not the result of deception, and the other had not himself enrolled in the program);

13 *Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658 (C.D. Cal. 2009) (finding that the proposed

14 representatives' claims were not typical and stating that named plaintiffs who purchased

15 different products than the class do not satisfy typicality); *Lewis Tree Service, Inc. v.*

16 *Lucent Technologies Inc.,* 211 F.R.D. 228, 234 (S.D.N.Y. 2002) (finding that the

17 proposed representatives' claims were not typical because the plaintiff bought only two

18 of 60 products listed in the complaint and did not demonstrate that the purchase

19 circumstances were similar).

20

21 Under Rule 23(a)(3), a court must determine whether "the claims or defenses of

22 the representative parties are typical of the claims or defenses of the class."  FRCP

23 23(a)(3).  "The test of typicality 'is whether other members have the same or similar

24 injury, whether the action is based on conduct which is not unique to the named

25 plaintiffs, and whether other class members have been injured by the same course of

26 conduct. . . .  Typicality refers to the nature of the claim or defense of the class

27 representative, and not to the specific facts from which it arose or the relief sought."

28 *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984-85 (9th Cir. 2011) (internal

references omitted).   "[T]he Rule 23(a)(3) typicality inquiry overlaps with the Rule 23(a)(4) adequacy requirement because 'both look to the potential for conflicts in the class.'" *Labou v. Cellco Partnership,* 2014 WL 824225, *3 (E.D. Cal. Mar. 3, 2014).

When the named plaintiff attempts to represent class members with different claims, court will conclude that the proposed representative's claims are atypical and deny certification. *Martin v. Home Depot U.S.A., Inc.,* 225 F.R.D. 198, 203 (W.D. Tex. 2004) (finding typicality lacking because there was no clear method for the class representatives to demonstrate they had actually purchased the allegedly defective product from the defendant).

1.     **ALL FOUR CALLS WERE AUTO-FORWARDED AND WENT UNANSWERED—PLAINTIFFS NEVER *RECEIVED* A WRONG NUMBER CALL**

Plaintiffs do not have standing to represent the class they attempt to allege.  Only four calls were attempted to Plaintiffs—one with a dialer and three were placed manually.  However, all four calls were auto-forwarded to another number and all four calls went unanswered.  The TracFone call records establish that Plaintiffs never *received* a wrong-number call.  (Richard Decl. ¶ 7, Ex. C.); *see e.g. Ybarra v. Dish Network, L.L.C.,* No. 14-11316, 2015 WL 6159755, at *4 (5th Cir. Oct. 20, 2015) (holding no TCPA where prerecorded voice did not actually play).

"A named plaintiff cannot represent a class alleging . . . claims that the named plaintiff does not have standing to raise. . . .  It is not enough that the class members share other claims in common." *Hawkins v. Comparet–Cassani,* 251 F.3d 1230, 1238 (9th Cir.2001); *Soto v. Castlerock Farming and Transport, Inc.,* 282 F.R.D. 492, 503 (E.D. Cal. 2012); *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982). To have standing to pursue a class action, plaintiff must show: "(1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to

have caused injury to other members of the putative class by the same defendants." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon,* 775 F.3d 154, 161 (2d Cir. 2014). As to the second factor, "[t]he core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant. . . ." *Id.,* 775 F.3d at 163.

In an analogous case, *Ybarra*, which interpreted a companion section to the TCPA, the Fifth Circuit held that "[t]o be liable under the "artificial or prerecorded voice" section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must actually play." 2015 WL 6159755, at *4.

Similarly here, Defendant's four call attempts were never even *received* by the number alleged in the Complaint and do not appear on call records of the wireless provider.  (Richard Decl. at ¶ 7, Ex. C.)

The legislative history of the TCPA makes clear Congress' intent was to prevent the intrusion and cost incurred in receiving unsolicited calls.  *See Bonime v. Avayu,* 547 F.3d 497, 499 (2d Cir. 2008).  Here, however, there was no intrusion because each call was auto-forwarded by Plaintiffs to another number not alleged in the Complaint.  There was also no cost as Plaintiff utilized a pre-paid wireless provider which did not even recognize the four attempted calls.  (Richard Decl. at ¶ 7, Ex. C.)

Stated simply, the TCPA should not apply to calls not charged to, and not received by, the suing party.

## 2.   TYPICALITY FAILS BECAUSE PLAINTIFFS' FACTS PRESENT UNIQUE DEFENSES

A named plaintiff does not satisfy the typicality or adequacy requirements if he is subject to unique defenses that threaten to become the focus of the litigation.  *Ellis,* 657 F.3d at 984.  A unique defense will render the proposed class representative's claims atypical if it is likely to be a major focus of the litigation.  *Gary Plastic Packaging Corp.*

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180, Fed. Sec. L. Rep. (CCH) P 95630, 16 Fed. R. Serv. 3d 700 (2d Cir. 1990) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."). The "major focus" test is designed to insure that defenses unique to the class representative would not consume a significant portion of class resources or distract from issues common to the class. *Koos v. First Nat. Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative."); *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509, Fed. Sec. L. Rep. (CCH) P 97021, 23 Fed. R. Serv. 3d 786 (9th Cir. 1992) ("[I]t is predictable that a major focus of the litigation will be on a defense unique to [the class representative]. Thus, [the class representative] fails to satisfy the typicality requirement of Rule 23(a)."). *Thompson v. Jiffy Lube Intern., Inc.,* 250 F.R.D. 607, 623 (D. Kan. 2008) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." (quoting *Beck v. Maximus, Inc.,* 457 F.3d 291, 301 (3d Cir. 2006))); *Fleck v. Cablevision VII, Inc.,* 763 F. Supp. 622, 626-27, Fed. Sec. L. Rep. (CCH) P 96242 (D.D.C. 1991) (finding named plaintiff's claims atypical because they were subject to a unique defense); *Kas v. Financial General Bankshares, Inc.,* 105 F.R.D. 453, 461-62, Fed. Sec. L. Rep. (CCH) P 91902, Fed. Sec. L. Rep. (CCH) P 91989, 40 Fed. R. Serv. 2d 1031, 1 Fed. R. Serv. 3d 726 (D.D.C. 1984) (same).

As set forth in more detail above, Plaintiffs purported claims are subject to the following unique defenses:

- only four calls were attempted—one using the LiveVox dialer, the other three placed manually—the single dialer call falls within the FTC's one-call safe harbor, *see* 2015 TCPA Order;

- Plaintiff Carol Kleja immediately forwarded all four numbers to another number not alleged in the Complaint, and all four calls went unanswered, therefore, the alleged calls were never even *received* as alleged, (Richard Decl. ¶¶ 3, 7, Exs. A & C);

- Plaintiff John Kleja has no standing, as he is not the subscriber of the cellular number alleged, (*Id.* at ¶ 5, Ex. B); *Guttierez,* 2011 WL 579238, *5; ;

- Defendant justifiably relied in good faith on the *prior express consent* given by the debtor, *Danehy,* 2015 WL 5534285, at *3; *Chyba,* 2014 WL 1744136 *12; *Clark,* 460 F.3d at 1174; Rest. (Second) of Torts § 892A, cmt. i.

## G.   <u>INDIVIDUAL QUESTIONS, NOT COMMON QUESTIONS, PREDOMINATE</u>

The predominance requirement of Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a)(2). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 624 (1997). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. Where there are a "greater number of questions peculiar to several categories of class members, and to individuals within each category," than common questions, and where the uncommon questions are "significant," the predominance requirement cannot be satisfied. *Id.* at 624.

For example, in the TCPA case *Gene & Gene,* the Fifth Circuit reversed class certification because the predominant issue of fact—whether defendant's fax advertisements were sent "without the prior express invitation or permission of each recipient"—was "undoubtedly one of individual consent." 541 F.3d at 327. Holding that the trial court abused its discretion in certifying a class, the Fifth Circuit relied on the defendant's evidence showing that its list of fax numbers had been collected over time

and from a variety of sources, including from the recipients themselves. *Id.* at 328-29; *see also Balthazor v. Cent. Credit Servs., Inc.,* 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012*)* (following *Gene & Gene* and *Hicks v. Client Services, Inc.,* 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) in denying certification of a TCPA class).

In *Vigus*, the defendant presented evidence that the telephone numbers it called had been provided to it by individuals who signed up for defendant's "rewards" program (as opposed to the plaintiff, who had been reassigned one of these telephone numbers). The court denied class certification, holding that given the facts that some putative class members voluntarily provided their telephone number to defendant, and thereby consented to being called, consent could not be determined "by generalized proof at the class level." *Vigus,* 274 F.R.D. at 23.

Similarly, in *G.M. Sign,* defendant introduced evidence that it had either elicited consent from every recipient of its fax advertisements that was not already a customer, or that every other recipient from whom consent was not specifically elicited had an established business relationship with the defendant. *G.M. Sign,* 2011 WL 248511, *8. Based on this evidence, the court determined that individualized questions predominated over common ones. The court reasoned that it "would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with defendant at the pertinent time" in order to "establish the population of the class, and to determine liability." *Id.* at *8-9.

Here, Plaintiffs proposed class consists entirely of members who provided *prior express consent* to be called on their cell phone.  The only purported claim Plaintiffs can assert is that in rare instances, the cell phone number has been reassigned to a third party without Defendant's knowledge.

Here, determining liability to putative class members would require individual inquiry into (a) whether each class member had provided prior express consent on the account placed with Defendant, (b) the number of calls placed by Defendant and

received by the putative class member, and (c) whether an ATDS was used for the particular calls at issue.  Accordingly, liability would turn on a myriad of individual questions, the predominance of which makes class certification inappropriate.  *See Balschmiter*, 303 F.R.D. at 510-30 (denying class certification in TCPA case finding (i) putative class is not ascertainable, (ii) that the individual issues of prior express consent would predominate over issues common to the class, and (iii) prior express consent is an individualized issue unfit for classwide resolution).

It is common sense that many debtors, and their close friends and family members, will falsely instruct a debt collector that they have reached the wrong number in order to have the calls cease.  Therefore, the proposed class is also overbroad because it encompasses debtors or households who may have consented to calls, but once delinquent on the account, claimed "you got the wrong number" in order for the calls to stop.

When considering whether a class action is superior to other methods of adjudication, courts consider, among other things, "the likely difficulties in managing the class." Fed. R. Civ. P. 23(b)(3)(d).  Here, the class action mechanism is not superior to other adjudication methods based on problems arising from inevitable difficulties in managing the class.  As discussed above, the "myriad of individual inquiries . . . necessary to arrive at a decision on the issue of liability ... renders this case unmanageable as a class action." *Vigus,* 274 F.R.D. at 237.

Here, the facts relating to Plaintiffs alone demonstrate class certification would be improper here because individualized questions abound—i.e. identifying the called party at the time of the calls, wrong number calls, prior express consent obtained in varying ways; call forwarding, shared phones, calls made without an automated dialer and manually dialed calls. Plaintiffs cannot avoid having these crucial issues predominate.

Plaintiff cannot show that common questions predominate over individual questions of consent.  Moreover, there is no evidence of the categorical use of an ATDS

to make calls to any named plaintiff or to the putative classes. Because individual issues regarding consent and ATDS use predominate over issues common to the class, the class allegations are improper and should be stricken.

**H.     PLAINTIFFS ASSERT AN IMPERMISSIBLE, "FAIL-SAFE" CLASS**

For purposes of the TCPA, calls made to collect a debt by a debt collector, are treated as calls made by the creditor under agency principles. *In the Matter of the Joint Petition Filed by Dish Network, LLC, Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules,* 28 F.C.C. Rcd. 6574, 6589 (2013); 2008 TCPA Order, 23 F.C.C. Rcd. 559, 565; *Jordan v. ER Solutions, Inc.,* 900 F. Supp. 2d 1323, 1327 (S.D. Fla. 2012) (debt collectors calls are treated as if the creditor made the call under the TCPA; if creditor has consent to call, so too does the debt collector). As set forth above, the class is not ascertainable because each potential member would have to demonstrate that it did not give prior express consent to be called in order to be included in the class.

Therefore, as phrased, Plaintiffs' definition is a "fail-safe" class. A fail-safe class occurs "when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.,* 375 F. App'x 734, 736 (9th Cir. 2010). "Because the TCPA prohibits calls to cellular telephones using [an ATDS] unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class." *Onley v. Job.com, Inc.,* 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (finding that a class definition that recited all of the elements of a TCPA claim and the requirement of a lack of prior consent was fail-safe); *see also Taylor v. Universal Auto Grp. I, Inc.,* 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) ("The court . . . is persuaded that inclusion of the 'without prior consent' language in the national classes

definition makes it a 'failsafe' class, as clearly the issue of consent is central to determining defendant's liability.).   Here, Plaintiffs include the same "without prior consent" class definition.  (*See* Compl. ¶ 26(d).)

Although the Ninth Circuit has not categorically forbid fail-safe classes, it has discussed their dangers. *In re AutoZone, Inc., Wage & Hour Emp't Practices Litig.,* 289 F.R.D. 526, 546 (N.D. Cal. 2012) (quoting *Kamar,* 375 F. App'x at 736). The problem with a fail-safe class is that, "once it is determined that a person, who is a possible class member, cannot prevail against the defendant, that member drops out of the class." *Kamar,* 375 F. App'x at 736. Either the class members win or are not in the class, but the court cannot enter an adverse judgment against the class. *In re AutoZone, Inc.,* 289 F.R.D. at 545–46. That result is not only "palpably unfair to the defendant" but it is "also unmanageable [from the outset]—for example, to whom should the class notice be sent?" *Kamar,* 375 F. App'x at 736.

Moreover, some courts dislike fail-safe classes because they appear to have a "head I win, tails you lose" aspect; in the words of the Sixth Circuit, such classes "allow putative class members to seek a remedy but not be bound by an adverse judgment— either those 'class members win or, by virtue of losing, they are not in the class' and are not bound."   *Young v. Nationwide Mut. Ins.* Co., 693 F.3d 532, 538 (6th Cir. 2012) (holding that "a class definition is impermissible where it is a 'fail-safe' class" (citing *Randleman v. Fidelity Nat. Title Ins. Co.,* 646 F.3d 347, 352, 79 Fed. R. Serv. 3d 828 (6th Cir. 2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."))).  *See also Hurt v. Shelby County Bd. of Educ.,* 2014 WL 4269113, *8 (N.D. Ala. 2014) ("A fail-safe class thus creates a 'heads I win, tails you lose' situation, where class members either receive a favorable judgment or are defined out of the class.   This scenario is patently unfair to the defendant." (quoting Erin L. Geller, The Fail–Safe Class As an Independent Bar to Class

Certification, 81 Fordham L. Rev. 2769, 2771 (2013) (quoting *Randleman,* 646 F.3d at 352))).

Courts hold that such liability-begging definitions are administratively infeasible, as the inquiry into class membership would require holding countless hearings resembling "mini-trials."  The result would also be unfair as it would fail to provide the final resolution of the claims of all class members that is envisioned in class action litigation."  *Richey,* 2015 WL 1542546, *2 & n.21 ("Fail-safe class definitions earn that title because they require the court to determine the merits of the class members' claims in order to determine class membership.");  *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.,* 2015 WL 401443, *4 (W.D. Pa. 2015) ("When a class is fail-safe—i.e., it 'requires the court to address the central issue of liability in the case,'—it is impermissibly vague and 'may be untenable.'");  *Kristensen v. Credit Payment Services*, 2014 WL 1256035, *6 (D. Nev. 2014) ("[C]lass definitions based on the merits of individual members' claims are not sufficiently definite . . .   The inquiry into class membership must not require holding countless hearings resembling 'mini-trials.'");  *Jackson v. Southeastern Pennsylvania Transp. Authority,* 260 F.R.D. 168, 182 (E.D. Pa. 2009) ("Where a proposed class requires the court to address the central issue of liability in the case, the class definition may be untenable. . . .   Under this definition, the Court would be required to conduct separate, individualized hearings for each potential class member on the central issue of litigation.");  *Jamie S. v. Milwaukee Public Schools,* 668 F.3d 481, 493–497, 277 Ed. Law Rep. 34, 81 Fed. R. Serv. 3d 890 (7th Cir. 2012) (holding that class was not properly identified and too indefinite and would require highly complex and individualized inquiries); *Felix v. Northstar Location Services, LLC,* 290 F.R.D. 397, 430–31 (W.D. N.Y. 2013), subsequent determination, 2013 WL 3196922 (W.D. N.Y. 2013) (finding class definition not ascertainable "because it would require inquiry into the merits of each potential class member's claim"); *Bennett v. Hayes Robertson Group, Inc.,* 880 F. Supp. 2d 1270, 1278 (S.D. Fla. 2012) (concluding

that class definition was too indefinite when it would place "the burden on the fact-finder to determine, on an individualized basis, whether Defendants have valid affirmative defenses" in order to determine class membership); *Kondratick v. Beneficial Consumer Discount Co.,* 2006 WL 305399, *10 (E.D. Pa. 2006) ("[B]ecause mini-hearings on the merits are required here to determine class membership, this class definition is untenable and cannot be certified.").

## IV.   <u>CONCLUSION</u>

All class actions should be stricken because Plaintiffs cannot meet the requirements for a class action and the unsuitability of class treatment is evident on the face of the Complaint and the incontrovertible facts.

Dated:  November 13, 2015          SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.P.

                                                */s/ Damian P. Richard*
                                                Damian P. Richard
                                                Attorney for Defendant
                                                Transworld Systems, Inc.